NO. 07-10-0143-CV

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL A

 SEPTEMBER 16, 2011

 JAMES WILLIAM KOHUTEK, APPELLANT

 v.

 SHERI RUTH KOHUTEK, APPELLEE

 FROM THE 85TH DISTRICT COURT OF BRAZOS COUNTY;[1]

 NO. 02-001484-CVD-85; HONORABLE J.D. LANGLEY, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

 MEMORANDUM OPINION

 Appellant, James William Kohutek, appeals from a judgment
entered in favor of Sheri Ruth Kohutek in a suit affecting the parent-
child relationship ("SAPCR"), following a bench trial. In support,
James presents six issues: (1)-(4) whether the trial court erred by
modifying the original divorce decree's provisions related to
geographic restrictions, Christmas possession, airline exchanges of
the children, and private school attendance when Sheri did not
specifically plead for the relief granted; (5) whether the trial
court's allocation of travel expenses was fair and equitable; and (6)
whether the trial court erred by modifying the decree's provisions
related to educational decisions when Sheri did not specifically plead
for the relief granted. We affirm.

 Background

 James and Sheri are the parents of two boys ages 14 and 12,
Randall and Jonathan, respectively. In 2003, James and Sheri divorced
per the terms of an Agreed Final Divorce Decree. Under the decree,
James and Sheri were appointed joint managing conservators and Sheri
was given the exclusive right to establish the primary residence of
the children in Brazos County, Texas.[2] The decree also provided
that Christmas holidays would be split between both James and Sheri
and that, until graduation, each parent would be responsible for fifty
percent of the boys' private school tuition at Brazos Christian
School, or another private school by agreement of the parties. James
was also ordered to pay Sheri $1,050 per month in child support.

 In March 2008, Sheri filed a Motion to Modify Parent-Child
Relationship and Notice of Hearing. The motion indicated that the
circumstances of Sheri and the children had materially and
substantially changed since the original order issued and she believed
the parties would "enter into a written agreement containing
provisions for modification of the order providing for conservatorship
of the children (removing the domicile restriction)," and "[contain]
provisions for modification . . . providing for possession of and
access to the children." (Emphasis added). She requested that the
terms and conditions for access to or possession of the children be
modified "[t]o remove the domicile restriction on a temporary basis so
that [Sheri] and the children [could] relocate to Alaska for (1)
year."

 James's Counterpetition to Modify Parent-Child Relationship
requested that he be appointed joint managing conservator with the
exclusive right to determine the children's residence within Brazos
County, Texas, have expanded standard periods of possession with the
children and have his child support payments decreased. His Original
Answer was a general denial.

 In April 2008, Sheri filed a Motion for Judge to Confer with
Children requesting that the court confer with the children, both at
the final hearing and for the temporary orders, to determine the
children's wishes regarding possession and access without the presence
of counsel, the parties, or a record being made. She also filed a
First Amended Petition to Modify Parent-Child Relationship seeking a
modification of James's child support obligation.

 In May 2008, the trial court issued its Agreed Temporary Orders
modifying the decree as follows: (1) Sheri was granted a temporary
modification of the geographic restriction for one year to permit her
to have the exclusive right to designate the primary residence of the
children in Anchorage, Alaska; (2) on or before June 15, 2009, Sheri
was required to notify James whether she intended to relocate in Texas
or seek a permanent (final order) removing the geographical
restriction contained in the decree at which time the case would be
set for trial in Brazos County; (3) the children shall attend either
Birchwood Christian Academy or Anchorage Christian School and the
provisions of the decree regarding allocation of private school
tuition would remain in effect; (4) James would have possession of the
children for the entirety of the Christmas break, December 20, 2008 to
January 3, 2009 with Sheri paying the children's round-trip airfare.
(Emphasis added).

 In May 22, 2009, Sheri's counsel sent a letter to James's
counsel indicating that Sheri wanted to extend the Temporary Orders
for an additional year before she made a final decision whether she
would return to Texas or seek to remain in Alaska. She received no
response and, in June, notified James's counsel that she was
exercising her option under the Temporary Orders to seek a final order
removing the geographic restriction. A final hearing was scheduled
for October 22, 2009. Prior to that hearing, Sheri responded to
discovery requests from James's counsel although James did not respond
to discovery requests from Sheri's counsel.

 Trial

 At trial, Sheri testified that after the divorce in 2003, she
was financially strapped, causing her to work long hours in order to
make enough to survive. Her schedule caused her to either have
someone stay with the boys when she wasn't there or have them
accompany her on calls. Because of her schedule, it was difficult for
the boys to have their own activities. As a result, she began to
consider options other than operating her own veterinary practice.
She testified that Brazos County was saturated with veterinarians
because of its proximity to the veterinary school at Texas A&M and
that there were no job options for her locally.

 In 2007, they traveled to Alaska to visit friends. While she
was there, she met some veterinarians and, when she returned to Texas,
the Alaskan veterinarians offered her a position as a salaried
employee working regular hours from 8:00 a.m. to 5:00 p.m. She
discussed the opportunity in Alaska with the boys and they were
excited about making the change. James did not want the boys to go
and, when she sought a temporary order to lift the geographic
restriction, James would not agree. Eventually she and James did
agree to temporarily lift the geographic restriction for one year.
The temporary order gave Sheri the option of seeking a permanent order
removing the geographic restriction, and it provided that the boys
would attend one of two private schools in Alaska.

 During the next year in Alaska, the boys were very happy,
relaxed, made straight "A's" in school and were very involved in
church and school activities. Their teachers believed the boys had
adjusted remarkably well. Sheri was working 8:00 a.m. to 4:00 p.m.,
no longer on call, had a much better life doing small animal medicine
and anticipated long term employment. Her office was only one-half
mile from the boys' school.

 Sheri and the boys regularly attended church at Anchorage
Baptist Temple where the boys were involved in Sunday school and a
youth group on Wednesdays. The boys were also involved in hiking,
fishing, snowmobiling, skiing, and dog sledding. Sheri testified as
to the stress the dispute between her and James was causing the boys.
As a result, Sheri requested that the court remove the Brazos County
domicile restriction and give her the exclusive right to make
decisions for the boys' education. Sheri also testified that she was
willing to terminate James's obligation to pay for private school
tuition if he would be responsible for paying airfare for himself or
the boys to visit. According to her testimony, one-half of private
school costs were $4,725, while the cost of flying both boys to Texas
four times a year was approximately $4,000, or $1,000 per trip if
tickets were purchased in advance.

 James testified he has been employed at a utility company for
thirty-two years and was in charge of the electrical equipment at the
plant. He works at the utility company from 7:00 a.m. until usually
3:30 p.m. to 5:00 p.m., but he is on call. He indicated he gets calls
in the middle of the night and his company works 24/7. At varying
points in his testimony, he estimated his income was $80,000 to
$85,000 per year.[3] James also owns and operates a foundation repair
company which he indicated broke even.

 On December 15, 2009, the trial court issued its order granting
Sheri's request that she have the exclusive right to designate the
primary residence of the children and make decisions regarding the
boys' education. The order also provided that James and Sheri would
have possession of the children annually on alternating Thanksgiving
and Christmas holidays and that James would be responsible for 100% of
any travel expenses associated with his possession of the children.
Finally, the order relieved James of the obligation to pay one-half of
the children's educational expenses, but it increased his child
support obligation to $1,322 per month. James's motion for new trial
was denied after a hearing. On March 5, 2010, by agreement of the
parties, the trial court amended provisions of its earlier order
pertaining to logistics for the airline transportation of the
children.[4] This appeal followed.

 Discussion

 James asserts the trial court abused its discretion by modifying
the decree's provisions related to geographic restrictions, Christmas
possession, private school attendance in Alaska and provisions related
to educational decisions when Sheri did not specifically plead for the
relief granted. He also questions whether the trial court's
allocation of travel expenses was fair and equitable.

 Modification of a SAPCR Order

 A court with continuing, exclusive jurisdiction may modify an
order that provides for the conservatorship, support, or possession of
and access to a child; Tex. Fam. Code Ann. § 156.001 (West 2008),[5]
if modification would be in the best interest of the child and (1) the
circumstances of the child, a conservator, or other party affected by
the order have materially and substantially changed since the earlier
of the date of the rendition of the order or the date of the signing
of a mediated or collaborative law settlement agreement, or (2) the
child is at least twelve years of age and has expressed to the court
in chambers, as provided in Section 153.009, the name of the person
who is the child's preference to have exclusive right to designate the
primary residence of the child. Id. at § 156.101(a)(1), (2). The
Texas Rules of Civil Procedure applicable to the filing of an original
proceeding apply to a suit for modification of a SAPCR order. §
156.004. In addition, if a change in residence results in increased
expenses for a party having possession or access to a child, the court
may also render orders to allocate the increased expenses on a fair
and equitable basis, taking into account the cause of the increased
expenses and the best interests of the child. § 156.103.

 Standard of Review

 In a SAPCR proceeding, we review a trial court's decision to
modify under an abuse of discretion standard. See Seidel v. Seidel,
10 S.W.3d 365, 368 (Tex.App.--Dallas 1999, no pet.). A trial court
abuses its discretion when it acts in an arbitrary or unreasonable
manner or when it acts without reference to any guiding principles.
Id.

 Pleading Requirements

 Texas Rule of Civil Procedure 90 provides that "[e]very defect,
omission or fault in a pleading either of form or of substance, which
is not specifically pointed out by exception in writing and brought to
the attention of the judge in the trial court . . . . in a non-jury
case, before the judgment is signed, shall be deemed to have been
waived by the party seeking reversal on such account" except as to any
party against whom default judgment is rendered.[6] (Emphasis added).
 Tex. R. Civ. P. 90.

 Here, James failed to object in writing or bring to the
attention of the trial court any insufficiency in Sheri's pleadings
when Sheri's counsel informed the trial court that Sheri was seeking
to modify the decree's provisions related to geographic restrictions,
Christmas possession, private school attendance in Alaska or
provisions related to educational decisions. He also failed to object
at trial when Sheri testified as to the modifications she sought or
when the trial court gave its oral pronouncement addressing these
issues at the trial's conclusion. Accordingly, James waived his
complaints regarding Sheri's lack of adequate pleading. See Horne v.
Harwell, 533 S.W.2d 450, 451-52 (Tex.Civ.App.--Austin 1976, writ ref'd
n.r.e.) (issue waived where no special exception taken to appellee's
failure to plead that the circumstances of the child had materially or
substantially changed); Gonzalez v. Gonzalez, 484 S.W.2d 611, 612-13
(Tex.Civ.App.--El Paso 1972, no writ) (issue waived where no special
exception or objection made to appellee's failure to plead the
residence requirement in her divorce action).

 Furthermore, the jurisdiction of the trial court was properly
invoked by Sheri's motion to modify the decree with respect to the
custody, control, visitation and possession of the boys. As such, the
trial court was "vest[ed] with decretal powers in all relevant
custody, control, possession and visitation matters involving the
child[ren]." Eliason v. Eliason, 162 S.W.3d 883, 887 (Tex.App.--
Dallas 2005, no pet.) (quoting Liehold v. Plass, 413 S.W.2d 698, 701
(Tex. 1967)). Moreover, although Rule 301 of the Texas Rules of Civil
Procedure generally requires a judgment to conform to the pleadings.
"Technical rules of practice and pleadings are of little importance in
determining issues concerning the custody of children." Liehold, 413
S.W.2d at 701. (citing Conley v. St. Jacques, 110 S.W.2d 1238, 1242
(Tex.Civ.App.--Amarillo 1937)).

 After having heard the bases for Sheri's modification of the
decree, James failed to object and participated fully in the trial
through argument, testimony and cross-examination. Therefore, it is
of no legal consequence whether Sheri pled that she be given all the
rights that she ultimately received. See Liehold, 413 S.W.2d at 701.
See also Tex. R. Civ. P. 67 ("When issues not raised by the pleadings
are tried by express or implied consent of the parties, they shall be
treated in all respects as if they had been raised by the pleadings.")
 Mayo v. Hall, 571 S.W.2d 213, 215 (Tex.Civ.App.--Waco 1978, no writ)
(issues as to modification of visitation and support tried by both
express and implied consent of the parties). Accordingly, under these
circumstances, we cannot say that the trial court abused its
discretion in granting Sheri the modifications she requested. Issues
one, two, four and six are overruled.

 Travel Expenses

 The only evidence at trial on the issue of whether the decree
should be modified to make Sheri entirely responsible for paying the
boys' private school expenses and James responsible for all travel
expenses was Sheri's testimony indicating that one-half of private
school tuition was $4,725 while the cost of flying both boys to Texas
four times a year was approximately $4,000. At trial, James did not
counter or object to Sheri's estimate that the boys would make four
trips to Texas a year[7] or offer any evidence of the frequency with
which he intended to visit Alaska or have the boys come to Texas.
Neither did he present any alternative evidence to Sheri's estimate of
the cost of airlines tickets at the bench trial.[8] Under the
circumstances, we cannot say that the trial court's modification was
arbitrary, unreasonable or without reference to guiding principles in
making the modification. Issue five is overruled.

 Conclusion

 The trial court’s judgment is affirmed.

 Patrick A. Pirtle
 Justice

-----------------------
[1]Originally appealed to the 10th Court of Appeals, this case was
transferred to this Court by the Texas Supreme Court pursuant to its
docket equalization efforts. See Tex. Gov(t Code Ann. ( 73.001 (West
2005). We are unaware of any conflict between precedent of the 10th
Court of Appeals and that of this Court on any relevant issue. See
Tex. R. App. P. 41.3.

[2]The decree provided that "the parties shall not remove the children
from Brazos County, Texas, for the purpose of changing the primary
residence of the children until modified by further order of the court
of continuing jurisdiction or by written agreement." (Emphasis
added).

[3]Although he received a letter asking for discovery regarding his
income, James did not respond.

[4]Although the parties agreement moots James third issue pertaining
to airline exchanges, his complaint that Sheri did not specifically
plead for that relief would subject to the same analysis and fate as
his complaint in issues one, two, four and six.

[5]Throughout the remainder of this opinion, provisions of the Texas
Family Code will be cited as "§ ____" or "section ____."

[6]James's motion for a new trial was filed in January after the trial
court had issued its oral pronouncement at the bench trial and
memorialized its rulings in a written judgment or order nearly a month
earlier. The terms of that order were restated in the Amended Order
signed March 5, 2010.

[7]Sheri's estimate assumed that James would exercise his right to
have the boys visit Texas for Thanksgiving or Christmas each year,
Easter vacation, forty-two days of summer possession and an additional
long weekend. The evidence at trial, however, indicated there were
long periods in which James did not exercise his right to possession
and once exercised his right to summer possession of only two weeks.
In 2008, the boys visited James in Texas during Easter vacation and,
in 2009, spent two weeks in the summer with him in Texas in addition
to another visit. In 2009, James also visited the boys in Alaska.

[8]In his appellate brief, we note that James's recitation of the
facts contains one or more statements of fact which are outside the
record and not supported by the evidence presented at trial. An
appellate court may not consider matters, or information, outside the
record. See In re M.S., 115 S.W.3d 534, 546 (Tex. 2003) ("this Court
- or any appellate court - may only consider the record presented to
it"); In re: Allstate Ins. Co., 232 S.W.3d 340, 343 (Tex.App.--Tyler
2007, no pet.) ("our review is limited to the record as it existed
before the trial court at the time it made its decision"); Siefkas v.
Siefkas, 902 S.W.2d 72, 74 (Tex.App.--El Paso 1995, no writ).